**The Cardoza Law Corporation**
Michael F. Cardoza, Esq. (SBN: 194065)
Mike.Cardoza@cardozalawcorp.com
Lauren B. Veggian, Esq. (SBN: 309929)
Lauren.Veggian@cardozalawcorp.com
548 Market St. #80594
San Francisco, CA 94104
Telephone:   (415) 488-8041
Facsimile:    (415) 651-9700
*Attorneys for Plaintiff,*
Andrew Hodlofski

# UNITED STATES DISTRICT COURT
# FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANDREW HODLOFSKI**<br><br>Plaintiff,<br><br>v.<br><br>**COLUMBIA DEBT RECOVERY, LLC, D/B/A GENESIS CREDIT MANAGEMENT, LLC and MICHAELS MANAGEMENT SERVICES, INC.;**<br><br>Defendants | **Case No.:** _5:19-cv-01248-JGB-SP<br>————<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

///
///
///
///

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

## INTRODUCTION

1. A privately owned military housing management company and its debt collectors is trying to force a U.S. military servicemember to pay their bogus "Pay-and-Go" move-out cleaning fees. When he refused because he had already perfectly cleaned his house and yard and had it inspected, they took his pet deposit to pay for part of it. Then they sent the rest of the bogus "Pay-and-Go" "cleaning charges" to collections and smeared his credit report.

2. **ANDREW HODLOFSKI** ("Plaintiff"), by Plaintiff's attorney, brings this action for actual damages, statutory damages, attorney fees, and costs, against **COLUMBIA DEBT RECOVERY, LLC D/B/A GENESIS CREDIT MANAGEMENT, LLC and MICHAELS MANAGEMENT SERVICES, INC.** for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices, as well as the Fair Credit Reporting Act 15 U.S.C. § 1681 et seq., (hereinafter "FCRA"),  Servicemembers Civil Relief Act, 50 U.S.C. § 3901 et seq. (hereinafter "SCRA"), California Civil Code §1950.5, and the California Bus. & Prof. Code §17200 et seq.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to the Plaintiff, or to the Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. All violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

6. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees,

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

representatives, and insurers of those Defendants named.

## JURISDICTION AND VENUE

7. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States, and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

8. This action arises out of Defendants' violations Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), the Fair Credit Reporting Act 15 U.S.C. § 1681 et seq., (hereinafter "FCRA"), Servicemembers Civil Relief Act, 50 U.S.C. § 3901 et seq. (hereinafter "SCRA"), California Civil Code §1950.5, and the California Bus. & Prof. Code §17200 et seq.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and transactions occurred here and Defendants transact business here.

## FCRA

10. The Fair Credit Reporting Act (FCRA), found at 15 U.S.C. § 1681, et seq., was originally enacted in 1970. The express purpose of the FCRA was to require that consumer reporting agencies adopt and implement "reasonable procedures" for ensuring that credit information about a consumer was collected, maintained, and dispensed "in a manner which is fair and equitable to the consumer with regard to the confidentiality, accuracy, relevancy and proper utilization of such information …" FCRA, 15 U.S.C. §1681(b); *Safeco Ins. Co. of Am. v. Burr* (2007) 551 U.S. 47, 127 S.Ct. 2201, 2205. The Congressional findings noted that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with of fairness, impartiality, and respect for the consumer's right to privacy."[1] The FCRA also imposes duties on the sources that provide credit

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

---

[1] FCRA, 15 U.S.C. §1681(a)(4)

information to credit reporting agencies, who are called "furnishers."

## FDCPA

11. In enacting the FDCPA, Congress found that:

   a.   There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.  Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

   b.   Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

   c.   Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

   d.   Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

   e.   It is the purpose of this title to eliminate abusive debt collection practice by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect Consumers against debt collection abuses.  15 U.S.C. § 1692.

   Civil Code § 1788.1(a)(1).

12. The FDCPA is a strict liability statute.  That is, a plaintiff need not prove intent or knowledge on the part of the debt collector to establish liability.  *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060-61 (9th Cir. 2011); *Donohue v. Quick Collect*, 592 F.3d 1027, 1030 ("[t]he FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional").

13. To further protect consumers, claims under the FDCPA are to be judged according to the "least sophisticated debtor" or "least sophisticated consumer" standard. *Gonzales* at 1061. This standard is lower than the "reasonable debtor" standard, and is specifically designed to protect consumers of below average and sophistication or intelligence. *Id.* In addition, a plaintiff need not even have actually been misled or deceived by the debt collector's communication. Rather, liability depends on whether the *hypothetical* least sophisticated debtor – someone who is uninformed and naïve – would have likely been misled. *Id.*; *see also Tourgeman v. Collins Financial Servs.*, 755 F.3d 1109, 1119 (9th Cir. 2014).

## SCRA

14. Congress enacted the SCRA in order to:

    a. provide for, strengthen, and expedite the national defense through protection extended by this Act to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and

    b. provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service. (50 U.S.C. § 3902)

15. The SCRA should be construed liberally. See LeMaistre v. Leffers, 333 U.S. 1,6 (1948) ("The Act should be read with an eye friendly to those who dropped their affairs to answer their country's call.").

16. When the Attorney General commences a civil action against a person who engages in a pattern or practice of violating the SCRA, it may recover all of the relief afforded to a Servicemember plus, in order to vindicate the public interest, a civil penalty of up to $55,000 for a first violation and up to $110,000 for every subsequent violation. (50 U.S.C. § 4041)

17. The SCRA grants any aggrieved person a private right of civil action and the

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

---

right to obtain equitable relief, monetary damages, punitive damages, costs and attorneys fees, and "all other appropriate relief." (50 U.S.C. § 4042,4043)

### PARTIES

18. Plaintiff is a natural person. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and a "Servicemember" serving a "period of military service" as those terms are defined by 50 U.S.C. § 3911. Plaintiff is also a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

19. Defendant Columbia Debt Recovery, LLC d/b/a Genesis Credit Management, LLC (hereinafter "Defendant CDR/GCM")  is a Washington corporation operating from an address of 7100 Evergreen Way, Suite C, Everett, WA 98203, and is a "Debt Collector" as that term is defined by 15 U.S.C. § 1692a(6) because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, defaulted consumer debts that it did not originate. It operates a nationwide debt collection business and attempts to collect debts from consumers in virtually every state, including consumers in the State of California. Its principal, if not sole, business purpose is the collection of defaulted consumer debts originated by others, and, in fact was acting as a debt collector as to the delinquent consumer debt it attempted to collect from Plaintiff. Defendant CDR/GCM is a "person" as defined by 15 U.S.C. § 1681a(b).

20. Defendant Michaels Management Services, Inc. (hereinafter "Defendant MMS") is a New Jersey corporation operating from an address of 3 E. Stow Road, Suite 100, Marlton, NJ 08053.

21. This case involves Plaintiff's "consumer report" as that term is defined by 15 U.S.C. § 1681a(d)(1).

22. Defendant CDR/GCM is a furnisher of information as contemplated by FCRA sections 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

23. Plaintiff is informed and believes, and thereon allege that at all times herein mentioned Named Defendants were agents, officers, directors, managing agents, employee and/or joint venturer of each of their co-defendants and, in doing the things hereafter mentioned, each was acting in the scope of his authority as such agent, officer, director, managing agent, employee, and/or joint venturer, and with the permission, knowledge, ratification, and consent of their co-defendants, and each of them. Any reference hereafter to "Defendants" without further qualification is meant by Plaintiff to refer to each Defendant, and all of them, named above.

### FACTUAL ALLEGATIONS

24. Plaintiff is a military servicemember who, when the debt collection began, was residing in the County of San Bernardino in the State of California. Plaintiff and his family have since been moved by the military to Alaska.

25. Plaintiff was an active duty military servicemember at the time he leased from Defendant MMS, at the time Defendant MMS impermissibly kept the pet security deposit, and at the time Defendant CDR/GCM attempted to collect the purported debt at issue from Plaintiff.

26. The rental property for which the Pay-and-Go "cleaning fee" was improperly charged is located in San Bernardino County in the State of California.

27. The lease contract between Plaintiff and Defendant MMS was signed and performed in San Bernardino County in the State of California.

28. The lease, home, and pet security deposit at issue in this case was signed, located, and/or performed in San Bernardino, in the State of California.

29. Plaintiff is informed and believes, and thereon alleges, that at all times relevant, Defendants conducted and continue to conduct business in the State of California.

30. Defendant CDR/GCM's business consists solely of the collection of delinquent consumer debts.

31. Plaintiff and his family moved into a 4459 Rhineland, a house in a military housing community called "The Villages at Fort Irwin" in San Bernardino County, which is managed by Defendant MMS, on July 27, 2016.

32. Upon move-in, Plaintiff did a walkthrough of the house, and made a list of all existing damages in the home on the community's standard "discrepancy listing" form. He signed this document at the time he made it. The document was also signed by a woman named "Susie," who is/was, on information and belief, a representative from Defendant MMS.

33. In addition to the discrepancy listing, there was a full walkthrough done of the home on the day Plaintiff and his family moved in, which was documented on a Move-In/Move-Out report.

34. The Move-In/Move-Out report was signed on 7/27/2016 by someone who, on information and belief, is/was a representative of Defendant MMS.

35. Plaintiff and his family lived in 4459 Rhineland until August 2018, when Plaintiff was moved to a different duty station by the military. Upon move-out, Defendant MMS presented Plaintiff with the option to either pay a $425 "Pay-and-Go" cleaning fee, and have the home cleaned by a service hired by Defendant MMS, or to clean the home himself, not pay the fee, and simply move out.

36. In reality, Defendant MMS is vested with considerable persuasive and coercive power over servicemembers. As servicemembers are assigned to new geographic duty stations, they receive orders to report on or before such-and-such a date to a base often in a different state or country (about every 24 months on average for soldiers stationed at Fort Irwin). Before they can go, however, they must obtain and complete a "check-out sheet" from their unit that lists all of the base services and unit departments that the servicemember must "clear" (i.e. get an approving signature) before the servicemember is issued any money or tickets for onward travel. Failing to show up at the new duty station in strict accordance with the orders issued is grounds for criminal conviction under the Uniform Code of

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

Military Justice (e.g. UCMJ Art. 86 – Unauthorized Absence). Thus, a failure to "clear housing" with the appropriate signatures results in the negative attention of a servicemember's superior officers and potentially administrative or criminal penalties. Defendant MMS knows this.

37. The $425 "Pay-and-Go" cleaning fee is described in all leasing paperwork as optional for renters. A renter may clean the home themselves prior to relinquishing possession of the rented property instead of paying the $425 "Pay-and-Go" cleaning fee.

38. Upon move-out, Plaintiff had the option to either pay a $30 "Pay-and-Go" backyard cleaning fee, and have the backyard cleaned by a service hired by Defendant MMS, or to clean the backyard himself, not pay the fee, and simply move out.

39. The $30 "Pay-and-Go" backyard cleaning fee is described in all leasing paperwork as optional for renters. They may clean the backyard themselves prior to relinquishing possession of the rented property instead of paying the $30 "Pay-and-Go" backyard cleaning fee.

40. Plaintiff chose to clean the home and the backyard himself, and opted *not* to pay either of the "Pay-and-Go" fees. In fact, Plaintiff specifically told Defendant MMS that he did not accept the option to pay either of the "Pay-and-Go" fees, but that he would clean his home and backyard by himself, as was his option.

41. In cleaning the home, Plaintiff even found the paint code for the home and bought paint to touch up the walls before leaving. Plaintiff ensured that the home was extremely clean and that it was in better condition than when he and his family had moved in.

42. When Plaintiff and his family moved out on August 1, 2018, another full walkthrough of the home was done, which was documented on the same Move-In/Move-Out report that had been initiated when Plaintiff moved in.

43. A comparison of the Move-In (7/27/2016) column to the Move-Out (8/1/2018)

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

column reveals that the conditions of each listed item were the same upon Move-Out as they were upon Move-In. There was no additional damage notated anywhere on this report.

44. The Move-In/Move-Out report was signed on 8/1/2018 by someone who, on information and belief, is/was a representative of Defendant MMS.

45. Also, on August 1, 2018, a woman who is/was, on information and belief, a representative/employee of Defendant MMS, did a cleaning inspection on the home. She told Plaintiff that she had been instructed that, "if he [Plaintiff] doesn't pay [the "Pay-and-Go" cleaning fee], fail him on everything."

46. True to her word, the representative/employee of Defendant MMS failed Plaintiff on every section of the cleaning inspection sheet, and then demanded that Plaintiff sign paperwork that permitted Defendant MMS to withhold $455 from his military pay. Plaintiff refused to sign the paperwork and refused to pay the $455 "Pay-and-Go" fees.

47. On January 18, 2019, at Plaintiff's request, Defendant MMS produced an itemization of the costs and payments for 4459 Rhineland during Plaintiff's occupancy, which included the notation of the "Pay-and-Go" charges in August 2018, and which showed that Plaintiff's pet security deposit was kept by Defendant MMS in order to cover the outstanding balance – i.e. the "Pay-and-Go" fees impermissibly and improperly assessed on Plaintiff.

48. Because of Plaintiff's refusal to pay the "Pay-and-Go" fee, Defendant MMS refused to return the $250 pet deposit that Plaintiff had paid when he and his family first moved into the property.

49. Before Plaintiff moved out of the 4459 Rhineland property, he initiated mail forwarding to his new address.

50. Defendant MMS never provided any paperwork to Plaintiff showing an itemized list of damages and/or cleaning required on the property, as is required under California law within 21 days of move-out.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

51. Defendant MMS never provided any paperwork to Plaintiff demanding payment.

52. Defendant MMS never provided any notice or paperwork to Plaintiff that it was sending any amount of alleged debt to collections.

53. On or around January 21, 2019, Defendant MMS placed the alleged debt to collections with Defendant CDR/GCM.

54. Defendant CDR/GCM sent Plaintiff a collections letter on or around January 22, 2019, indicating that the alleged debt had a principal balance of $205.00, with interest due totaling $9.77. The total alleged debt being collected by Defendant CDR/GCM per the January 22, 2019, collections letter is $214.77.

55. On or around February 7, 2019, Plaintiff disputed the alleged debt directly with Defendant CDR/GCM and demanded documentation validating and verifying the debt, and explaining the situation to Defendant CDR/GCM.

56. Defendant CDR/GCM sent Plaintiff a collections letter on or around February 15, 2019, indicating that the alleged debt had a principal balance of $205.00, with interest due totaling $11.12. The total alleged debt being collected by Defendant CDR/GCM per the February 15, 2019, collections letter is $216.12.

57. Accompanying the February 25, 2019, letter from Defendant CDR/GCM was the two-page move-in/move-out report, and a two-page accounting ledger, both from the community Plaintiff moved out of. These documents did not validate or verify the debt because they show that the conditions upon move-in were the same as the conditions upon move-out, with no new damage or wear reported upon move-out. There were no deductions or charges for damages, caused by a pet or otherwise. There was no indication that the house and/or backyard were not cleaned properly prior to Plaintiff moving out.

58. On or around February 28, 2019, Plaintiff again disputed the alleged debt directly with Defendant CDR/GCM and again demanded actual documents which verify and/or validate the debt, as the previously provided documents did not do so.

59. In February 2019, Plaintiff also discovered that Defendant CDR/GCM was

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

reporting the alleged debt being collected by Defendant CDR/GCM to his credit reports.

60. In or around February/March 2019, Plaintiff submitted disputes to Experian, Equifax, and TransUnion stating that he did not owe the alleged debt being reported by Defendant CDR/GCM, and requesting that it be removed from his credit report.

61. On March 15, 2019, Plaintiff received a dispute results letter from Experian removing the alleged debt being reported by Defendant CDR/GCM from his credit report.

62. On April 26, 2019, Plaintiff received a dispute results letter from Equifax declining to remove the alleged debt being reported by Defendant CDR/GCM from his credit report, stating that it was verified as accurate, and adding in a note that the account information is disputed by the consumer.

63. On April 27, 2019, Plaintiff received a dispute results letter from TransUnion declining to remove the alleged debt being reported by Defendant CDR/GCM from his credit report, and adding a note that the account information is disputed by the consumer.

64. On information and belief, Plaintiff alleges that on one or more occasions, Equifax, Experian, and TransUnion forwarded Plaintiff's disputes to Defendant CDR/GCM via an Automatic Credit Dispute Verification ("ACDV") (which is a document a consumer reporting agency is required to send to an information furnisher in the event the credit reporting agency receives a dispute directly from a consumer. This document lets the information furnisher know they need to verify the debt and to tell the credit reporting agency that either the debt is correct or it is not so that the consumer reporting agency can update the consumer's report).

65. Upon information and belief, Defendant CDR/GCM was provided Notice of Plaintiff's disputes, and despite this notice, failed and refused to investigate and

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

correct its inaccurate reporting.

66. In any event, Defendant CDR/GCM already had the Move-In/Move-Out report that showed zero damage to the home or property caused by Plaintiff because they were the ones who had provided him with a copy back on February 25, 2019.

67. If Defendant CDR/GCM had actually investigated Plaintiff's dispute, they would have realized from documents in their possession that Plaintiff does not owe the disputed amount, and they would have also received corroborating evidence from Plaintiff that he doesn't owe the supposed debt. They may have also uncovered additional evidence unknown to anyone that Plaintiff does not owe the disputed amount.

68. On information and belief, Defendant CDR/GCM understood the nature of Plaintiff's disputes when they received the ACDV and other documentation regarding Plaintiff's disputes from Experian, Equifax, and/or TransUnion.

69. To date, the alleged debt is still being reported by Defendant CDR/GCM to Plaintiff's credit reports.

70. Defendant CDR/GCM did not provide notice to Plaintiff that his dispute was "frivolous or irrelevant," yet still allowed the inaccurate and misleading information to report on Plaintiff's credit reports.

71. Defendant CDR/GCM received, but ignored the Plaintiff's dispute letters and did refuse to delete the inaccurate information regarding the account from the Plaintiffs' credit files.

72. Defendant MMS did not provide Plaintiff an itemized statement indicating the basis for and amount of security deposit received, and disposition of the security deposit within 21 days of Plaintiff's move-out as required by Cal. Civ. Code §1950.5(g)(1).

73. Defendant MMS did not provide Plaintiff an itemized statement including documents showing charges incurred and deducted to repair or clean the premises within 21 days of Plaintiff's move-out, as required by Cal. Civ. Code §1950.5(g)

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

(2).

74. The pet security deposit held by Defendant MMS for the duration of Plaintiff's lease and held after to cover a cleaning fee is a lien for storage, repair, or cleaning of the property or effects of a servicemember.

75. Defendant MMS held the pet security deposit as a lien on Plaintiff's leased property for cleaning of the property.

76. Defendant MMS kept the pet security deposit it held as a lien on Plaintiff's leased property after Plaintiff moved out, and used it to cover the "outstanding balance" related to the leased property, which consisted solely of "Pay-and-Go" charges.

77. Defendant MMS foreclosed on the servicemember Plaintiff's pet security deposit lien without a court order.

## ACTUAL DAMAGES

78. Plaintiff has suffered actual damages as a result of these illegal collection and intimidation tactics by this Defendant in the form of pecuniary damage, loss of credit, damage to credit, invasion of privacy, personal embarrassment, loss of personal reputation, loss of productive time, nausea, and feelings of anxiety, hopelessness, anger, persecution, emotional distress, frustration, upset, humiliation, and embarrassment, amongst other negative emotions.

79. Plaintiff's $250 pet deposit was wrongfully withheld.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

### COUNT I

### VIOLATION OF §1681S-2(B) OF THE FCRA

### AGAINST DEFENDANT CDR/GCM ONLY

80. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

81. A defendant violates §1681s-2(b) of the FCRA when it receives notice of a dispute to a debt from a consumer reporting agency and fails to fully and properly investigate Plaintiff's disputes by failing to, (1) conduct an investigation with

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

respect to the disputed information, and (2) review all relevant information provided by the consumer reporting agency.

82. Defendant CDR/GCM understood the nature of Plaintiff's disputes when it, on information and belief, received an ACDV from Experian, Equifax, and/or TransUnion.

83. Defendant CDR/GCM GCM violated §1681s-2(b) of the FCRA when it failed to conduct a proper investigation into the disputed information provided by the consumer reporting agencies, and failed to review all relevant information provided by the consumer reporting agencies with regard to the disputed debt.

84. As a result of the conduct, actions, and inactions of Defendant CDR/GCM, Plaintiff suffered actual damages, including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

85. The conduct, actions and inactions by Defendant CDR/GCM were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendant CDR and Defendant GCM were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

86. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from Defendant CDR/GCM in an amount to be determined by the Court pursuant to 15 U.S.C. §11681n and §1681o.

## COUNT II

### VIOLATION OF CAL CIV. CODE §1950.5(G)(1)

### AGAINST DEFENDANT MMS ONLY

87. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

88. A defendant violates Cal. Civ. Code §1950.5(g)(1) when it fails, within 21

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

calendar days of the tenant's vacation of the premises, to furnish to the tenant by personal delivery or first class mail, a copy of an itemized statement indicating the basis for and the amount of the security deposit received and the deposition of such security deposit, and return any remaining portion of the security deposit.

89. Defendant MMS violated Cal. Civ. Code §1950.5(g)(1), when it failed, within 21 days of Plaintiff vacating 4459 Rhineland, to furnish to Plaintiff an itemized statement which indicated the basis for and amount of the pet security deposit received, the disposition of the pet security deposit received, and failed to return any remaining portion of the pet security deposit.

90. The pet security deposit was intended for damages caused by a pet. No other security deposit was provided to Defendant MMS or The Villages at Fort Irwin for Plaintiff's rental of 4459 Rhineland.

91. Defendant MMS failed to furnish any itemized statement to Plaintiff in the 21 days following Plaintiff's move-out from 4459 Rhineland.

92. Defendant MMS failed to furnish an itemized statement to Plaintiff in the 21 days following Plaintiff's move-out from 4459 Rhineland which indicated that the pet security deposit was being retained to repair any damages caused to 4459 Rhineland by a pet during Plaintiff's tenancy.

93. Defendant MMS failed to return any amount Plaintiff's pet security deposit.

**COUNT III**

**VIOLATION OF CAL. CIV. CODE §1950.5(G)(2)**

**AGAINST DEFENDANT MMS ONLY**

94. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

95. A defendant violates Cal. Civ. Code §1950.5(g)(2) when it fails, within 21 calendar days, to furnish with the itemized statement in Cal. Civ. Code §1950.5(g)(1), copies of documents showing charges incurred and deducted to

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

repair or clean the premises. These documents could reasonable include copies of bills/invoices/receipts supplied by the entity performing the work, or an itemized statement reasonably describing the work performed by a landlord employee.

96. Defendant MMS violated Cal. Civ. Code §1950.5(g)(2) when it failed to furnish, within 21 calendar days of Plaintiff's move-out or otherwise, copies of documents which showed the charges incurred and deducted to repair/clean the premises. Defendant MMS did not provide, within 21 calendar days of Plaintiff's move-out or otherwise, any bills/invoices/receipts supplied by the entity who purportedly clean 4459 Rhineland after Plaintiff moved out. Defendant MMS did not provide, within 21 calendar days of Plaintiff's move-out or otherwise, any itemized statement reasonably describing the work purportedly performed by Defendant MMS's employee(s) to clean 4459 Rhineland after Plaintiff moved out.

**COUNT IV**

**VIOLATION OF § 17200 ET SEQ. OF THE CAL. BUS. AND PROF. CODE**

**AGAINST DEFENDANT MMS ONLY**

97. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

98. A defendant violates §17200 et seq. of the Cal. Bus. and Prof. Code when it participates in unfair competition, which means and includes utilizing any unlawful, unfair, or fraudulent business act or practice.

    a. An "unlawful business act or practice" is any practice forbidden by law. *Watson Labs, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1120 (C.D. Cal. 2001).

    b. An "unfair business act or practice" is intentionally broad, allowing courts maximum discretion to prohibit new schemes to defraud. *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal.App.4th 1093, 1103

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

(1996). Generally, an "unfair business act or practice" is when the practice "offends an established public policy of when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Davis v. Ford Motor Credit Co, LLC*, 179 Cal.App.4th 581, 595 (2009).

c. A "fraudulent business act or practice" bears little resemblance to common law fraud or deception. The test is whether the public is likely to be deceived, meaning fraud in this statutory context can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage. *People ex. Rel. Bill Lockyer v. Fremont Life Ins. Co.,* 104 Cal.App.4th 505, 516-517 (2002).

99. Pursuant to Cal. Civ. Code §3294(a), "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

100. Defendant MMS violated §17200 et seq. of the Cal. Bus. & Prof. Code when it participated in unfair competition by utilizing unlawful, unfair and fraudulent business practices.

a. Defendant MMS utilized unlawful business practices by unlawfully retaining Plaintiff's pet security deposit without providing the statutorily required itemized statement and supporting documentation for cleaning charges within 21 days of Plaintiff moving out, in violation of Cal. Civ. Code §1950.5(g)(1) and (2).

b. Defendant MMS utilized unfair business practices by unethically, intentionally, and without basis failing Plaintiff on all aspects of the move-out cleaning inspection solely because Plaintiff declined and refused to pay the supposedly optional $425 "Pay-and-Go" fee and $30

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

backyard "Pay-and-Go" fee – thus attempting to force Plaintiff to pay the $455 total in "Pay-and-Go" fees when Plaintiff had already substantially and properly cleaned the home and backyard himself.

c. Defendant MMS utilized fraudulent business practices by lying to its renters, telling them that Pay-and-Go cleaning fees were "optional" upon move-out, and then intentionally failing every renter – including Plaintiff – who opted to clean their own home instead of pay the "Pay-and-Go" cleaning fee. Stating the cleaning fees are "optional" deceives renters into believing that they will be able to clean their own homes prior to move-out and have it approved by Defendant MMS, when reality is that Defendant MMS will not approve any home as properly cleaned that is cleaned by the renter instead of paying the "Pay-and-Go" fee.

101. Defendant MMS lied to Plaintiff, by telling him the "Pay-and-Go" cleaning fees for the homes and backyards were optional, and then intentionally failed Plaintiff after he cleaned his home and backyard, solely so they could charge the "Pay-and-Go" cleaning fees to get an extra $455 out of Plaintiff after he moved out of their community. This is a fraudulent business activity, as stated above, and constitutes fraud for purposes of punitive damages under Cal. Civ. Code §3294.

## COUNT V

### VIOLATION OF § 1692E OF THE FDCPA

### AGAINST DEFENDANT CDR/GCM

102. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

103. A debt collector violates § 1692e of the FDCPA when it uses any false, deceptive, or misleading representation or means in connection with the collection of any debt.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

104. Defendant CDR/GCM violated § 1692e when it, among other qualifying actions and omissions, willfully misrepresented the legal status of the debt, to wit: reporting the "Pay-and-Go" debt to Plaintiff's credit reports when Plaintiff did not owe the debt.

## COUNT VI

### VIOLATION OF § 1692F OF THE FDCPA

### AGAINST DEFENDANT CDR/GCM ONLY

105. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

106. A debt collector violates § 1692f of the FDCPA when it uses unfair or unconscionable means to collect or attempt to collect any debt.

107. Defendant CDR/GCM violated § 1692f(1) when it, among other qualifying actions and omissions, willfully and without justification, collected/attempted to collect the alleged debt when the collection thereof was not authorized by agreement or permitted by law.

## COUNT VII

### VIOLATION OF § 1785.25 OF THE CCRAA

### AGAINST DEFENDANT CDR/GCM ONLY

108. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

109. On one or more occasions within the two years prior to the filing of this suit, by example only and without limitation Defendant CDR/GCM violated Cal Civ §1785.25(a) by furnishing incomplete and/or inaccurate information about Plaintiff to one or more consumer credit reporting agencies when they knew or should have known that the information was incomplete or inaccurate.

110. As a result of the conduct, actions and inactions of Defendant CDR/GCM, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff behalf by counsel: loss of credit, damage to

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

reputation, embarrassment, humiliation and other mental and emotional distress.

111. The conduct, actions and inactions by Defendant CDR/GCM were willful, rendering Defendant CDR/GCM liable for punitive damages in an amount of up to $5,000 for <u>each</u> violation to be determined by the Court pursuant to Cal Civ §1731(a)(2)(B). In the alternative Defendant CDR/GCM was negligent entitling the Plaintiff to recover under Cal Civ §1731(a)(1).

112. The Plaintiff is entitled to recover actual damages,  costs and attorney's fees from Defendant CDR/GCM in an amount to be determined by the Court pursuant to Cal Civ §1731(a)(1).

## COUNT VIII

### VIOLATION OF 50 U.S.C. § 3958 OF THE SCRA

### AGAINST DEFENDANT MMS ONLY

113. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

114. A person violates § 3958 of the SCRA when it forecloses or enforces any lien on a servicemember's property or effects without a court order granted before foreclosure or enforcement, during the servicemember's military service and for 90 days thereafter.

115. Plaintiff is an active duty military servicemember. Plaintiff was an active duty military servicemember at the time it leased from Defendant MMS, at the time Defendant MMS impermissibly kept the pet security deposit, and at the time Defendant CDR/GCM attempted to collect the debt at issue from Plaintiff.

116. The pet security deposit that Defendant MMS kept was a lien for storage, repair, or cleaning of the property or effects of a servicemember or a lien on such property or effects for any other reason. As such, the pet security deposit was a lien for purposes of the SCRA.

117. Defendant MMS kept Plaintiff's pet security deposit without providing any

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

documentation to Plaintiff justifying such a charge. Thus, Defendant MMS foreclosed on a lien on the property or effects of the servicemember Plaintiff without a court order.

118. Defendant MMS violated § 3958 of the SCRA when it foreclosed on Plaintiff's pet security deposit lien by keeping the pet security deposit to cover an improperly levied cleaning charge on the leased property of servicemember Plaintiff – without a court order.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against each Defendant for:

a) Award of actual damages pursuant to 15 U.S.C. §1681n or §1681o (FCRA), and Cal. Civ. Code §1950.5(l), against Defendant CDR/GCM and for Plaintiff, and,

b) Award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) (FDCPA) against Defendant CDR/GCM and for Plaintiff, and,

c) Award of statutory damages in the amount of $1000.00 pursuant to 15 U.S.C. § 1692k(a)(1) (FDCPA) against Defendant CDR/GCM and for Plaintiff, and,

d) Award of actual damages pursuant to Cal Civ §1731 (CCRAA), against Defendant CDR/GCM and for Plaintiff, and,

e) Award of punitive damages in the amount of $5,000 for each violation as the court deems proper pursuant to Cal Civ §1731 (CCRAA), against Defendant CDR/GCM and for Plaintiff, and,

f) Punitive damages pursuant to 15 U.S.C. §1681n for willful noncompliance, against Defendant CDR/GCM and for Plaintiff, and,

g) Award of restitution of Plaintiff's pet security deposit plus interest pursuant to Cal. Bus. & Prof. Code §17200 et seq. (*Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal.App.4th 997, 1012 (2005); *Korea*

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

*Supply Co. v. Lockheed Martin Corp.,* 130 Cal.App.4th 440, 445 (2005)), against Defendant MMS and for Plaintiff, and,

h) Punitive damages pursuant to Cal. Civ. Code §3294 against Defendant MMS for fraudulent business practices in violation of Cal. Bus. & Prof. Code §17200 et seq., against Defendant MMS and for Plaintiff, and,

i) Punitive damages pursuant to Cal. Civ. Code § 3294 and 50 U.S.C. § 4043 of the SCRA for  violation of § 3958 of the SCRA, against Defendant MMS and for Plaintiff, and,

j) Award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. §16861n and/or §1681o (FCRA), and pursuant to Cal Civ §1731 (CCRAA), and pursuant to 15 U.S.C. §1692k(a)(1), against Defendant CDR/GCM and for Plaintiff, and,

k) Award of costs of litigation and reasonable attorneys' fees pursuant to 50 U.S.C. § 4042 (SCRA), against Defendant MMS and for Plaintiff, and,

l) Statutory damages of two times the amount of Plaintiff's pet security deposit for bad faith retention of such security deposit, pursuant to Cal. Civ. Code §1950.5(l), against Defendant MMS and for Plaintiff, and,

m) An order, pursuant to Cal. Bus. & Prof Code 17200 et seq., directing that Defendant MMS instruct its debt collection agency, Defendant CDR/GCM, to immediately delete all of the derogatory information from Plaintiff's credit reports and files and cease reporting any information about Plaintiff to any and all persons and entities to whom they report consumer credit information; and

n) Award to Plaintiff of such other and further relief as may be just and proper.

## <u>TRIAL BY JURY IS DEMANDED.</u>

119. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

**THE CARDOZA LAW CORPORATION**

DATED: August 28, 2019          BY: /S/ LAUREN B. VEGGIAN
                                MICHAEL F. CARDOZA, ESQ.
                                LAUREN B. VEGGIAN, ESQ.
                                ATTORNEYS FOR PLAINTIFF,
                                ANDREW HODLOFSKI

ELECTRONICALLY STORED INFORMATION REQUEST

This notice is to demand that you preserve all documents, tangible things and electronically stored information ("ESI") potentially relevant to any issues in the above entitled matter. This specifically includes, but is not limited to, all information pertaining to the above matter, including specifically all recordings of any telephone communication between your company and Plaintiff.

As used in this request, "you" and "your" or "your client" refers to your organizations, and its predecessors, successors in interest, assignees, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, employees, servants, agents, attorneys, and accountants.

Much of the information subject to disclosure or responsive to discovery is stored on your client's current and former computer systems and other media and devices (such as: personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (for example and not as an exclusive list) potentially relevant information whether electronically, magnetically or optically stored.

This preservation obligation extends beyond ESI in yours or your client's care, possession or custody and includes ESI in the custody of others that is subject to your client's direction or control. You must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your client's obligation to do so, and you must try to secure their compliance.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104